Nos. 23-12408-E & 23-12411-J (consolidated)

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

◆

BLAKE WARNER,
*Plaintiff-Appellant,*

v.

SCHOOL BOARD OF HILLSBOROUGH COUNTY, FLORIDA,
*Defendant-Appellee.*

◆

On Appeal from the United States District Court
for the Middle District of Florida
(8:23-cv-00181-SDM-JSS & 8:23-cv-01029-SDM-SPF)

## BRIEF OF APPELLANT

Jeffrey C. Mateer
Hiram S. Sasser, III
David J. Hacker
Justin E. Butterfield
**FIRST LIBERTY INSTITUTE**
2001 W. Plano Pkwy., Suite 1600
Plano, Texas 75075
Tel: 972.941.4444
Fax: 972.941.4457
jbutterfield@firstliberty.org
hsasser@firstliberty.org

Aaron M. Streett
**BAKER BOTTS L.L.P.**
910 Louisiana Street
Houston, Texas 77002-4995
Tel: 713.229.1234
Fax: 713.229.1522
aaron.streett@bakerbotts.com

Matthew P. Erickson
Matthew M. Hilderbrand
**BAKER BOTTS L.L.P.**
401 South 1st Street, Suite 1300
Austin, Texas 78704-1296
Tel: 512.322.2500
Fax: 512.322.2501
matthew.erickson@bakerbotts.com
matthew.hilderbrand@bakerbotts.com

*Attorneys for Appellant Blake Warner*

Nos. 23-12408-E and 23-12411-J (consolidated)

*Warner v. School Board of Hillsborough County, Florida*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, the undersigned counsel certifies that the following listed persons and parties may have an interest in the outcome of this case:

1.   **AKERMAN LLP** (Attorneys for Appellee)

2.   **BAKER BOTTS, L.L.P.** (Attorneys for Appellant)

3.   **BUTTERFIELD, Justin** (Attorney for Appellant)

4.   **ERICKSON, Matthew P.** (Attorney for Appellant)

5.   **FIORE, Kristen (**Attorney for Appellee)

6.   **FIRST LIBERTY INSTITUTE** (Attorneys for Appellant)

7.   **FLYNN, Hon. Sean P.** (U.S. Magistrate Judge, M.D. Fla.)

8.   **HILDERBRAND, Matthew M.** (Attorney for Appellant)

9.   **J.W.** (Minor child of Appellant)

10.  **MARGOLIN, Jason L.** (Attorney for Appellee)

11.  **MERRYDAY, Hon. Steven D.** (U.S. District Judge, M.D. Fla.)

Nos. 23-12408-E and 23-12411-J (consolidated)
*Warner v. School Board of Hillsborough County, Florida*

12. **SASSER, Hiram** (Attorney for Appellant)

13. **SCHOOL BOARD OF HILLSBOROUGH COUNTY, FL** (Appellee)

14. **SNEED, Hon. Julie S.** (U.S. Magistrate Judge, M.D. Fla.)

15. **STREETT, Aaron M.** (Attorney for Appellant)

16. **WARNER, Blake Andrew** (Appellant)

The undersigned also certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument. This case involves a question of exceptional importance: whether parents can litigate on behalf of their children pro se, or whether they must hire a lawyer to do so.  If their parents are unable to obtain counsel, then child litigants are barred from court altogether.  Appellant believes that oral argument would assist the panel in weighing the difficult and important legal issues presented in this case, including whether Eleventh Circuit precedent requires barring parents from bringing suit pro se on their children's behalf and, if so, why revising Circuit precedent is necessary to comply with federal law.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT............................................................................... C-1

STATEMENT REGARDING ORAL ARGUMENT........................................... i

TABLE OF CONTENTS ........................................................................... ii

TABLE OF CITATIONS ........................................................................... iv

JURISDICTIONAL STATEMENT ...................................................................1

STATEMENT OF THE ISSUE ...............................................................1

STATEMENT OF THE CASE.................................................................2

   I.     Warner brings his child's claims pro se. ...............................................2

   II.    The district court denies Warner pro se status and dismisses the
child's claims for lack of counsel.........................................................3

   III.   Warner files these interlocutory appeals. ...........................................6

SUMMARY OF THE ARGUMENT....................................................................6

STANDARD OF REVIEW ....................................................................10

ARGUMENT............................................................................................10

   I.     The counsel mandate violates federal law..........................................10

     A.   The counsel mandate's key premise is self-defeating.....................12

ii

B.      The counsel mandate is incompatible with 28 U.S.C. § 1654..........15

C.      The counsel mandate violates Warner's and J.W.'s constitutional rights. .................................................................................18

    1.  The constitutional rights of parents......................................18

    2.  The constitutional rights of children ...................................22

D.      The counsel mandate is inconsistent with FRCP 17........................26

II.     *Devine* does not control. ...........................................................28

A.      *Devine* was overruled. ..............................................................28

B.      *Devine* did not purport to be a blanket ban. .....................................32

CONCLUSION ................................................................................34

CERTIFICATE OF COMPLIANCE ...................................................36

CERTIFICATE OF SERVICE ............................................................37

## TABLE OF CITATIONS

**Page(s)**

C<small>ASES</small>

*A.C. v. Agency for Health Care Admin.*,
  322 So. 3d 1182 (Fla. Dist. Ct. App. 2019) ...............................................27, 28

*ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*,
  557 F.3d 1177 (11th Cir. 2009) ...........................................................................7

*Alonso v. Alonso*,
  No. 22-10607, 2023 WL 309588 (11th Cir. Jan. 19, 2023) .............................30

*Alonso v. Pub. Health Tr. of Miami-Dade Cnty.*,
  No. 22-14133, 2023 WL 5955117 (11th Cir. Sept. 13, 2023) (per curiam)
  (unpublished) ....................................................................................................30

*Bellotti v. Baird*,
  443 U.S. 622 (1979).........................................................................................22

*Bill Johnson's Rests., Inc. v. NLRB*,
  461 U.S. 731 (1983).........................................................................................23

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
  404 U.S. 508 (1972).........................................................................................23

*Chambers v. Baltimore & Ohio R.R.*,
  207 U.S. 142 (1907).........................................................................................23

*Cheung v. Youth Orchestra Found. of Buffalo, Inc.*,
  906 F.2d 59 (2d Cir. 1990) ................................................................................8

*Crafton v. Effingham Cnty. Sch. Bd. of Educ.*,
  No. CV421-268, 2021 WL 4691447 (S.D. Ga. Oct. 7, 2021).........................13

*Craig ex rel. R.C. v. Fla. Highway Patrol*,
    No. 0:22-CV-62024-JEM, 2023 WL 2023875 (S.D. Fla. Jan. 25, 2023).........13

\*Devine v. Indian River Cnty. Sch. Bd.*,
    121 F.3d 576 (11th Cir. 1997)................................................................. passim

*Dingler v. Georgia*,
    725 F. App'x 923 (11th Cir. 2018) (per curiam) (unpublished).................31

*Dixit v. Fairnot*,
    No. 7:19-CV-194, 2023 WL 4188095 (M.D. Ga. June 26, 2023)..................13

*DuPont v. S. Nat'l Bank of Hous.*,
    771 F.2d 874 (5th Cir. 1985).......................................................................20

*Faretta v. California*,
    422 U.S. 806 (1975)............................................................................6, 7, 22

*Franklin v. Garden State Life Ins.*,
    462 F. App'x 928 (11th Cir. 2012) (per curiam) (unpublished).................31

*FuQua v. Massey*,
    615 F. App'x 611 (11th Cir. 2015) ....................................................13, 28, 31

*Grappell v. Carvalho*,
    847 F. App'x 698 (11th Cir. 2021) (per curiam) (unpublished)......13, 30, 32

*Iriele v. Griffin*,
    65 F.4th 1280 (11th Cir. 2023).....................................................................31

*Johns v. Cnty. of San Diego*,
    114 F.3d 874 (9th Cir. 1997)........................................................................20

*Joseph v. Quest*,
    414 So. 2d 1063 (Fla. 1982)...........................................................................7

*Kennedy v. Floridian Hotel, Inc.*,
    998 F.3d 1221 (11th Cir. 2021).......................................................................4

*LaTele Television, C.A. v. Telemundo Commc'ns Grp., LLC*,
  9 F.4th 1349 (11th Cir. 2021) ...................................................................1, 6

*M.L.B. v. S.L.J.*,
  519 U.S. 102 (1996) ................................................................................23, 24

*Mantz ex rel. Dunkley v. Soc. Sec. Admin., Comm'r*,
  No. 21-12789, 2022 WL 2859460 (11th Cir. July 21, 2022) (per curiam)
  (unpublished) ................................................................................................31

*Meeker v. Kercher*,
  782 F.2d 153 (10th Cir. 1986) (per curiam) ...................................................8

*Miller v. Byers*,
  833 F. App'x 225 (11th Cir. 2020) (per curiam) (unpublished) .................31

*Oliver v. Southcoast Med. Grp., LLC*,
  No. CV411-115, 2011 WL 2600618 (S.D. Ga. June 13, 2011) ......................33

*Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Pa.*,
  937 F.2d 876 (3d Cir. 1991) ..........................................................................20

*Parham v. J.R.*,
  442 U.S. 584 (1979) ................................................................................16, 21

*Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*,
  268 U.S. 510 (1925) .......................................................................................20

*Poole v. Lambert*,
  819 F.2d 1025 (11th Cir. 1987) ................................................................12, 26

*Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs*,
  87 F.3d 1242 (11th Cir. 1996) .......................................................................10

*Procup v. Strickland*,
  792 F.2d 1069 (11th Cir. 1986) (en banc) ........................................24, 25, 26

*Raskin ex rel. JD1 & JD2 v. Dall. Indep. Sch. Dist.,*
    69 F.4th 280 (5th Cir. 2023)................................................................. passim

*Smith v. GTE Corp.,*
    236 F.3d 1292 (11th Cir. 2001) ........................................................29

*T.R.B. by & through Green v. Berryhill,*
    No. CV419-068, 2019 WL 2202785 (S.D. Ga. May 21, 2019) ......................33

*Thomas v. Leon Cnty. Fire Dep't,*
    No. 21-13042, 2023 WL 1815509 (11th Cir. Feb. 8, 2023) (per curiam)
    (unpublished) ..................................................................................30

*Tindall v. Poultney High Sch. Dist.,*
    414 F.3d 281 (2d Cir. 2005) ............................................................14

*Troxel v. Granville,*
    530 U.S. 57 (2000)..................................................................18, 19, 21

*Turner v. Rogers,*
    564 U.S. 431 (2011)..................................................................12, 26

*United States v. Fritts,*
    841 F.3d 937 (11th Cir. 2016).........................................................29

*United States v. Izurieta,*
    710 F.3d 1176 (11th Cir. 2013) ......................................................31

*United States v. Ven-Fuel, Inc.,*
    758 F.2d 741 (1st Cir. 1985) ..........................................................17

*Wenger v. Canastota Cent. Sch. Dist.,*
    146 F.3d 123 (2d Cir. 1998) ...........................................................20

*White v. United States,*
    No. 22-13736, 2023 WL 3885816 (11th Cir. June 8, 2023) (per curiam)
    (unpublished) ..................................................................................31

*Whitehurst v. Wal-Mart*,
306 F. App'x 446 (11th Cir. 2008) (per curiam) (unpublished)............31, 33

*Whitehurst v. Wal-Mart Stores E., L.P.*,
329 F. App'x 206 (11th Cir. 2008) (per curiam) (unpublished)................31

*\*Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*,
550 U.S. 516 (2007)....................................................................9, 30

**CONSTITUTIONS**

Fla. Const. art. V, § 3 ...............................................................28

**STATUTES & RULES**

28 U.S.C. § 1291....................................................................1

28 U.S.C. § 1331....................................................................1

28 U.S.C. § 1367....................................................................1

*\*28 U.S.C. § 1654 .......................................................... passim

Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*...9, 29, 30

Judiciary Act of 1789, Pub. L. No. 1-20, 1 Stat. 73.......................15, 16

**RULES**

11th Cir. R. 36-1 ..................................................................31

Fed. R. App. P. 4 ..................................................................6

Fed. R. Civ. P. 12..................................................................15

*\*Fed. R. Civ. P. 17 .......................................................... passim

Fla. R. Civ. P. 1.210..............................................................7, 23

**OTHER AUTHORITIES**

Lisa V. Martin, *No Right to Counsel, No Access Without: The Poor Child's Unconstitutional Catch-22*, 71 Fla. L. Rev. 831 (2019) ........................8, 14, 25

Antonin Scalia & Bryan A. Garner, Reading Law (2012)................................18

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction over Appellant's federal-law claims under 28 U.S.C. § 1331.  It had supplemental jurisdiction over his state-law claims under 28 U.S.C. § 1367.

This Court has appellate jurisdiction in this consolidated appeal.  The district court denied pro se status, so appellate jurisdiction exists under the collateral-order doctrine.  *See LaTele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, 9 F.4th 1349, 1356-58 (11th Cir. 2021).  Additionally, the district court entered a final judgment dismissing the complaint in M.D. Fla. No. 8:23-cv-1029, so this Court has appellate jurisdiction over that matter under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Did the district court err in sua sponte denying Appellant pro se status with respect to his minor child—and, relatedly, in dismissing the child's claims for lack of counsel?

## STATEMENT OF THE CASE

In the proceedings below, the district court denied Blake Warner, a non-lawyer parent, the right to represent his minor child pro se in this race-discrimination case against the child's school district.  The court then dismissed the child's claims and instructed that the case would only be reopened if Warner returned with a lawyer.

### I.    Warner brings his child's claims pro se.

Blake Warner brought these two lawsuits pro se—in both cases, on behalf of himself and his minor child, J.W.—in the United States District Court for the Middle District of Florida against the School Board of Hillsborough County, Florida.  *See* Fed. R. Civ. P. 17(c) (permitting parents to sue on behalf of their minor children).  He filed one case on January 26, 2023, which received case number 8:23-cv-181 (the "181 Case"). Warner filed a second, closely related case on May 10, 2023, which received case number 8:23-cv-1029 (the "1029 Case").

In both cases, Warner alleges that the Board operates a racially segregated school system in violation of federal and Florida law by drawing

school boundaries using racial criteria, depriving J.W. of the school of his choice. Doc. 29, at 15-16 (181 Case); Doc. 19, at 5-11 (1029 Case). Warner and his minor child, J.W., are of African-American descent. Doc. 19, at 2 (1029 Case). J.W. attends a public school operated by the Board. *Id.* As a result of the Board's unlawful conduct, J.W. has been assigned to a poorly rated minority-majority school farther from his home, rather than a closer, highly rated white-majority school that has capacity to accept him. Doc. 19, at 1-2, 5-6 (1029 Case).

Although Warner originally brought the lawsuits on behalf of both J.W. and himself, he later amended the complaint in the 181 Case to assert only claims on his own behalf. Doc. 29 at 1-2 (181 Case). The 1029 Case, however, continues to assert claims on both Warner's and J.W.'s behalf. Doc. 19 at 1-2 (1029 Case).

## II. The district court denies Warner pro se status and dismisses the child's claims for lack of counsel.

On July 5, 2023, the district court dismissed the 1029 Case without prejudice. Doc. 28 (1029 Case). Although the court issued several rulings that day, only two of them are directly relevant to this appeal.

3

First, the court dismissed Warner's claims on the ground that Warner had improperly split his claims across the two matters.  Doc. 28 at 1-4 (1029 Case); *see Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 (11th Cir. 2021) (claim splitting generally impermissible).  To ensure that all of his claims are presented in a single lawsuit, the court then instructed Warner to amend the complaint in the 181 Case to assert all of his claims against the Board there. Doc. 28 at 4 (1029 Case).

Second, the court sua sponte dismissed J.W.'s claims for lack of counsel.  Relying on an unpublished Eleventh Circuit case, which in turn cited *Devine v. Indian River County School Board*, 121 F.3d 576, 581 (11th Cir. 1997), the district court held that "parents who are not attorneys may not bring a pro se action on their child's behalf."  Doc. 28 at 3-4 (1029 Case). "Thus, if Warner intends to appear as a plaintiff on behalf of his minor child and assert his child's claims, Warner must appear through a lawyer.  (Again, Warner may assert *pro se* claims on behalf of himself only.)"  Doc. 28 at 4 (1029 Case).

4

The court ordered a copy of its dismissal order in the 1029 Case to also be filed in the 181 Case. In so doing, the court denied Warner pro se status with respect to J.W.'s claims in the 181 Case, too: "If Warner intends to appear as a plaintiff to assert his son's claims, Warner must appear through a lawyer." Doc. 37 at 4 (181 Case). As a result, Warner must hire a lawyer to advance J.W.'s race-discrimination claims in the 181 Case or else the claims can never be heard in federal court.

The district court did all of this sua sponte, not receiving the benefit of briefing on the subject. Doc. 28 at 3 (1029 Case) ("[N]either party discusses Warner's ability to prosecute *pro se* his child's claims."). Nor did the court hold a hearing on the issue. The court did not consider whether Warner could afford a lawyer, whether competent and reliable counsel was available, or whether Warner could capably represent his child's interests in court without a lawyer to hold his hand. Instead, the court gave Warner three weeks to find and hire an attorney on pain of not having his child's school-desegregation and school-choice claims heard at all.

### III.    Warner files these interlocutory appeals.

On July 21, Warner filed timely notices of interlocutory appeal in both cases.  Doc. 42 (181 Case); Doc. 29 (1029 Case); *see* Fed. R. App. P. 4(a)(1)(A).  This Court then granted Warner's motion to consolidate the two appeals.  Meanwhile, as the district court ordered, Warner amended his complaint in the 181 Case, and proceedings on the merits have resumed while this interlocutory appeal is pending.[1]  And he did all of this without counsel.

### SUMMARY OF THE ARGUMENT

In federal court, "parties may plead and conduct their own cases personally or by counsel."  28 U.S.C. § 1654.  This statutory right is only the tip of the "right of self-representation" iceberg, which is deeply rooted in American legal tradition.  It stems back to colonists' "appreciation of the virtues of self-reliance and a traditional distrust of lawyers."  *Faretta v.*

---

[1] There is no risk of mootness here.  A final judgment on the merits in the 181 Case will not moot this interlocutory appeal.  *See LaTele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, 9 F.4th 1349, 1357 n.4 (11th Cir. 2021).  Nor can a final judgment in the 181 Case render the final judgment in the 1029 Case non-final.

*California*, 422 U.S. 806, 826 (1975); *see Raskin ex rel. JD1 & JD2 v. Dall. Indep. Sch. Dist.*, 69 F.4th 280, 290-92 (5th Cir. 2023) (Oldham, J., dissenting in part) (summarizing history of the right).  Indeed, "the notion of compulsory counsel was utterly foreign to [the Founders.]"  *Faretta*, 422 U.S. at 833.  As a result, all Americans have had a statutory right to appear in court without a lawyer from when the Judiciary Act was passed in 1789 until today.

Except children.

While Section 1654 gives children the theoretical right to proceed pro se, they cannot exercise that right because they lack capacity to sue.  Fed. R. Civ. P. 17(c); Fla. R. Civ. P. 1.210(b).[2]  Instead, a parent or guardian must sue on the child's behalf.  *See id.*  And while a parent is typically allowed to

---

[2] "Capacity to sue or be sued is determined . . . by the law of the individual's domicile."  Fed. R. Civ. P. 17(b)(1) (line break omitted).  J.W. is domiciled in Florida.  And "Florida law, which applies to capacity determinations in this case, requires that a child sue by his next friend because the child does not have capacity to sue on his own.  The only way for [the child] to seek redress for his injuries is for his father to sue on his behalf, which is what his father did."  *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1195 (11th Cir. 2009) (internal quotation marks and citations omitted); *see also Joseph v. Quest*, 414 So. 2d 1063, 1064 (Fla. 1982) ("Minors and infants must bring suits through a representative, next friend, or guardian ad litem.").

exercise his child's substantive and procedural rights on the child's behalf, courts have concocted an exception to the right to proceed without a lawyer. According to these courts, it does not matter if parents cannot pay for counsel or if they decide that the case does not warrant the expense. Parents must pay the piper or forfeit the fight.[3]

This so-called "counsel mandate," Lisa V. Martin, *No Right to Counsel, No Access Without: The Poor Child's Unconstitutional Catch-22*, 71 Fla. L. Rev. 831, 856 (2019) (devising this phrase) [hereinafter *Catch 22*], has nothing going for it. Its purported policy rationale is self-defeating; far from giving children their day in court, in many cases it bars them from court altogether. The counsel mandate is also inconsistent with the statutory and constitutional right to self-representation, a parent's right to make critical decisions for their children, and a child's own constitutional right to access the courts and to do so without a lawyer.

---

[3] *See, e.g.*, *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990); *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986) (per curiam).

While unpublished decisions of this Court have frequently assumed that the counsel mandate is required by circuit precedent, this is thankfully not the case. To counsel's knowledge, only one published decision of this Court has ever endorsed the counsel mandate: *Devine v. Indian River Cnty. Sch. Bd.*, 121 F.3d 576, 581-82 (11th Cir. 1997), *overruled in part by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 535 (2007). *Devine* is not binding, however, because its holding was narrow, applying only to cases under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.* Even if IDEA were somehow relevant here, *Devine* was expressly overruled on that point by the Supreme Court in *Winkelman*, 550 U.S. at 535. Nevertheless, unpublished decisions of this Court and in the district courts have continued to cite *Devine* as if it were binding. Finally, even if *Devine* were binding, and even if it were not disturbed by the Supreme Court's decision in *Winkelman*, unpublished decisions of this Court have taken *Devine* too far. *Devine* never imposed an ironclad bar against parental pro se representation. Instead, its reasoning supports a case-by-case

approach that is sensitive to the needs of the child, the availability of counsel, and the capabilities of the parent.

## STANDARD OF REVIEW

De novo review applies because the issue presented is a question of law. *See Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996).

## ARGUMENT

The district court erred in applying the counsel mandate to deny Warner the right to present J.W.'s claims in the 181 and 1029 Cases and in dismissing J.W.'s claims in the 1029 Case.  First, the counsel mandate rests on self-defeating reasoning and, at any rate, violates federal law.  Second, *Devine* does not require applying the counsel mandate in this case.  If the Court finds *Devine* controlling, that case should be overturned en banc.

## I. The counsel mandate violates federal law.

While the counsel mandate has won support in multiple circuits, it has faced serious scrutiny.  It should be rejected here for four reasons.  **(A)** Its purported justification—to guarantee that children have effective legal

representation—is self-defeating because, as in this case, courts end up dismissing the child's claims altogether for lack of counsel.  **(B)** The counsel mandate cannot be squared with the statutory right to self-representation conferred by 28 U.S.C. § 1654.  **(C)** The counsel mandate is inconsistent with, if not directly violative of, the constitutional rights of both parent litigants and their children: the constitutional rights of parents to make critical decisions on behalf of their children, the child's constitutional right of self-representation, and the child's constitutional right to access the courts.  At a minimum, these constitutional problems demand that any ambiguities in § 1654 be construed against forcing counsel upon unwilling children and their parents—and dismissing their cases if they are unable or unwilling to hire a lawyer.  Finally, **(D)** to the extent the counsel mandate is an inflexible categorical bar, it violates Federal Rule of Civil Procedure 17(c), which commands the district courts to be flexible in ensuring that children who are unrepresented have their claims heard in court.  Rule 17(c) can also be plausibly read to require courts to look to state law to determine whether parents can represent their children pro se, *see Raskin ex rel. JD1 & JD2 v.*

*Dallas Indep. Sch. Dist.*, 69 F.4th 280, 293 (5th Cir. 2023) (Oldham, J., dissenting in part), in which case the Court should certify that issue to the Florida Supreme Court.

### A. The counsel mandate's key premise is self-defeating.

The first cases endorsing the counsel mandate were premised on a naked policy preference, not law.  For example, this Court in *Devine*,[4] observed that no statute *expressly* grants parents the right to represent their children pro se.  121 F.3d at 581.  The panel then stated that "parents who are not attorneys may not bring a *pro se* action on their child's behalf—[this rule] helps to ensure that children rightfully entitled to legal relief are not deprived of their day in court by unskilled, if caring, parents," *id.* at 582.

Despite the best intentions, this rationale backfires and bars children from court when their parents cannot afford a lawyer.  There is no right to counsel in civil matters.  *See Turner v. Rogers*, 564 U.S. 431, 441 (2011); *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987).  So courts in the Eleventh

---

[4] Below, Appellant argues in more detail why *Devine* is not binding on this Court. *See infra* Section II.

Circuit wind up *dismissing* children's claims for lack of counsel.  This case is exemplary.  *See* Doc. 28 at 4 (1029 Case) ("No later than July 28, 2023, a lawyer must appear, or an order will dismiss this action without further notice." (boldface omitted)).[5]

The irony is inescapable.  A judge-made rule designed to ensure children have the best advocates for their claims ends up barring their claims altogether.  Indeed, this mismatch between means and ends has caught the attention of judges and scholars.  For example, as the Second Circuit stated,

---

[5] *See also, e.g.*, *Grappell v. Carvalho*, 847 F. App'x 698, 701 (11th Cir. 2021) (per curiam) (unpublished) ("the district court should have dismissed those claims without prejudice"); *FuQua v. Massey*, 615 F. App'x 611, 613 (11th Cir. 2015) ("the district court properly granted the motion to dismiss"); *Dixit v. Fairnot*, No. 7:19-CV-194, 2023 WL 4188095, at *4 (M.D. Ga. June 26, 2023) ("[A] district court may dismiss a complaint brought by a non-attorney parent seeking to represent their minor child."); *Craig ex rel. R.C. v. Fla. Highway Patrol*, No. 0:22-CV-62024-JEM, 2023 WL 2023875, at *2 (S.D. Fla. Jan. 25, 2023), *report and recommendation adopted*, No. 22-62024-CIV, 2023 WL 2016953 (S.D. Fla. Feb. 15, 2023) ("An action like this one, where a parent attempts to represent their child *pro se*, is subject to dismissal."); *Crafton v. Effingham Cnty. Sch. Bd. of Educ.*, No. CV421-268, 2021 WL 4691447, at *1-2 (S.D. Ga. Oct. 7, 2021) (directing parent to "retain counsel to represent the interests of her minor children within 14 days" because "any claims asserted on behalf of her children . . . may be subject to dismissal").

while "the rule stems largely from our desire to protect the interests of minors," "it may, in some instances, undermine a child's interest in having claims pursued for him or her when counsel is as a practical matter unavailable." *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 286 (2d Cir. 2005). And "in some cases—perhaps in the appeal before us—it may force minors out of court altogether." *Id.*

*Devine* makes the perfect the enemy of the good. It is premised on the assumption that the alternative to parents representing their child's claims in court is lawyers doing so. But it is not. For many—perhaps most—the alternative is simply no access to the courts at all. "Federal courts routinely dismiss children's claims for lack of counsel in the name of protecting children's interests." Martin, *Catch-22*, *supra*, at 831. Consequently, "the mandate does not result in poor children securing counsel. Absent further court action, the mandate may simply result in the dismissal of children's claims." *Id.* at 880. *Devine*'s consequentialist rationale fails on its own terms.

Even if Warner were a horrible advocate for J.W. (he is not), how could that be any *worse* than barring J.W.'s school-desegregation and school-choice

claims from being heard altogether?  The stakes are high.  As this litigation proceeds, so does the school year.  It is not as if J.W. can simply vindicate his rights years later by suing to get back into middle school.  The law gives J.W. the right to attend the school of his choice free from racial discrimination, and the counsel mandate obliterates that claim altogether.

### B.  The counsel mandate is incompatible with 28 U.S.C. § 1654.

As mentioned, following *Devine*, in the name of protecting children's claims, courts in the Eleventh Circuit dismiss children's claims for lack of counsel as a matter of course.  But a motion to dismiss for lack of counsel is not a standard basis for dismissal.  *See* Fed. R. Civ. P. 12(b).  Nor can it be, because federal law unequivocally gives every litigant the right to proceed *without* counsel. 28 U.S.C. § 1654.

Since the creation of the federal judiciary, all litigants have had the right to appear in court without an attorney.  The Judiciary Act of 1789 provided that, "in all the courts of the United States, the parties may plead and manage their own causes personally or by the assistance of . . . counsel." Pub. L. No. 1-20, 1 Stat. 73, 92.  The statute's modern formulation is

functionally equivalent: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel." 28 U.S.C. § 1654.

The judge-made counsel mandate, therefore, violates a federal statute. First, the right to self-representation should preclude dismissal for lack of counsel, period. It makes no sense whatsoever to dismiss a litigant's case just because he exercised a right guaranteed by law. Second, the counsel mandate deprives children of the right of self-representation enshrined in § 1654. They undeniably have that right. So how do children exercise their right to self-representation? The same way they do everything else in court—*through their parents*. *See* Fed. R. Civ. P. 17(c); *Parham v. J.R.*, 442 U.S. 584, 621 (1979) (Stewart, J., concurring in the judgment) ("For centuries it has been a canon of the common law that parents speak for their minor children."). This is why federal law authorizes parents to "sue or defend" on behalf of their children. Fed. R. Civ. P. 17(c).

True, some courts have read § 1654 to forbid parental pro se representation because it says that parties may conduct "their *own*" cases pro

se.  *See Raskin*, 69 F.4th at 283 (quoting Judiciary Act of 1789, Pub. L. No. 1-20, 1 Stat. 73, 92).  And because a child's claims are not the parent's "own," the reasoning goes, the parent cannot prosecute them without a lawyer.  *See id.*  But that argument leads to an absurd result.  Section 1654 says that "parties may plead and conduct their own cases *personally or by counsel*."  28 U.S.C. § 1654 (emphasis added).  Those two options—(1) "personally" and (2) "by counsel"—are coequal options under the plain syntax of the clause.  If the "their own" language bars parents from representing their children "personally," then it also prevents them from representing their children "by counsel."  *See Raskin*, 69 F.4th at 297 (Oldham, J., dissenting in part) (making this argument).  And that cannot be right.  As a plain matter of textual interpretation, § 1654 either gives parents the right to choose between representing their children "personally" or "by counsel," or it says they cannot litigate their children's claims at all.  The counsel mandate writes "personally" out the statute.

In sum, the counsel mandate is inconsistent with both the plain text and purpose of 28 U.S.C. § 1654.  To hold otherwise would render the

statutory right of self-representation a nullity for many litigants. *Cf. United States v. Ven-Fuel, Inc.*, 758 F.2d 741, 762 (1st Cir. 1985) (noting that a court should not adopt a "restrictive reading" of a statute that renders it "meaningless in the vast majority of cases").

As discussed above, Section 1654 unambiguously gives parents the right to represent their children's claims "personally." Even if there were any ambiguity, those ambiguities must be construed to avoid constitutional problems. *See* Antonin Scalia & Bryan A. Garner, Reading Law 247-51 (2012) (discussing the constitutional-avoidance canon). But as explained next, the judge-made counsel mandate is fraught with constitutional problems.

### C. The counsel mandate violates Warner's and J.W.'s constitutional rights.

The counsel mandate runs afoul of the constitutional rights of both child litigants and their parents.

#### 1. *The constitutional rights of parents*

Parents possess a fundamental liberty interest in the "care, custody, and control of their children." *See Troxel v. Granville*, 530 U.S. 57, 65 (2000). "[T]he Due Process Clause does not permit [the government] to infringe on

18

the fundamental right of parents to make child rearing decisions simply because a . . . judge believes a 'better' decision could be made." *Id.* at 72-73.

The counsel mandate does exactly that: because a panel of judges believed that lawyers would do a better job, parents are forced to either hire a lawyer or refrain from vindicating their child's rights at all. *See, e.g.*, *Devine*, 121 F.3d at 582. But the counsel mandate does not account for the fact that lawyers vary widely in skill and competence, as do parents. Take a recent case from the Fifth Circuit, for example. There, a pro se mother "filed two excellent briefs," "properly filed the Record Excerpts," and even "presented oral argument in front of [the Fifth Circuit] panel." *Raskin*, 69 F.4th at 288 (Oldham, J., dissenting in part). Parents who are not lawyers can still be "passionate and effective advocate[s]" for their children even if they have not passed the bar exam. *Id.*

The Constitution does not permit the state to forcibly wedge a lawyer into a properly functioning parent and child relationship. Indeed, the very right to self-representation was premised, in part, on early Americans' distrust of government-imposed lawyers. *Raskin*, 69 F.4th at 291 (Oldham,

19

J., dissenting in part) (summarizing the "anti-lawyerism" attitudes present at the Founding resulting from colonists' negative experiences with the Justice of the King's Court and the Crown's Attorneys- and Solicitors-General). In their attempts to justify the counsel mandate, courts are fond of saying that children are "the ward of every court wherein [their] rights of property are brought into jeopardy." *Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 883 (3d Cir. 1991) (quoting *DuPont v. S. Nat'l Bank of Hous.*, 771 F.2d 874, 882 (5th Cir. 1985)); *Wenger v. Canastota Cent. Sch. Dist.*, 146 F.3d 123, 125 (2d Cir. 1998); *Johns v. Cnty. of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997). But children are the wards of their parents, not the state. *See Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 573 (1925).

Forcing counsel upon unwilling parents also interferes with parents' right to make critical, often life-changing decisions for the child. *Devine* itself is a great example. There, the parent moved to allow his child's counsel to withdraw and to allow the parent to continue representation pro se, "citing undisclosed differences" with counsel. 121 F.3d at 578. Indeed, it is not hard

to imagine situations in which a lawyer's single-track duty to advance his child client's immediate legal interests conflicts with a parent's multifaceted duty to safeguard and direct her child's welfare and upbringing. This is why the law presumes that "parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions" and that "parents . . . act in the best interests of their children." *Parham*, 442 U.S. at 602. The same cannot necessarily be said of lawyers.

In sum, the counsel mandate violates parents' constitutional right to "make decisions concerning the care, custody, and control of [one's] children." *Troxel*, 530 U.S. at 66. It is based on the idea that lawyers are a more reliable source of wellbeing for children than parents. *See Devine*, 121 F.3d at 582 ("parents who are not attorneys may not bring a *pro se* action on their child's behalf—because it helps to ensure that children rightfully entitled to legal relief are not deprived of their day in court by unskilled, if caring, parents"). That paternalistic instinct is incompatible with the rights of parents.

## 2. *The constitutional rights of children*

The counsel mandate's constitutional harm does not stop with parents—it violates the constitutional rights of children, too. It does so in at least two ways.

First, it violates children's right to self-representation. Just like § 1654, the U.S. Constitution enshrines a fundamental right to self-representation. This constitutional right is deeply rooted in the American legal tradition, stemming back to the colonists' "appreciation of the virtues of self-reliance and a traditional distrust of lawyers." *Faretta v. California*, 422 U.S. 806, 826 (1975) (recognizing the deeply rooted right of self-representation); *see Raskin*, 69 F.4th at 290-92 (Oldham, J., dissenting in part) (summarizing history of the right). Indeed, "the notion of compulsory counsel was utterly foreign to [the Founders.]" *Faretta*, 422 U.S. at 833. And "[a] child, merely on account of his minority, is not beyond the protection of the Constitution." *Bellotti v. Baird*, 443 U.S. 622, 633 (1979).

The counsel mandate strips child litigants of their constitutional right to self-representation. Here, the district court told J.W. to come back with a

lawyer—or not at all.  Doc. 28 at 4 (1029 Case).  That violated J.W.'s constitutional right to proceed without a lawyer.

Second, the counsel mandate in many cases—including this one—strips children of their constitutional right to access the courts.  In tandem with rules prohibiting children from appearing in court, *see* Fed. R. Civ. P. 17(b)(1); Fla. R. Civ. P. 1.210(b), the counsel mandate effectively bars many children's claims from federal court altogether.  The Constitution does not allow this.

The right of access to the courts is one of the "highest and most essential privileges of citizenship," a constitutional "right conservative of all other rights." *Chambers v. Baltimore & Ohio R.R.*, 207 U.S. 142, 148 (1907).  The right to access the courts is grounded in the First Amendment right to petition the government for redress of grievances. *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).  The right is also grounded in equal-protection and due-process principles. *M.L.B. v. S.L.J.*, 519 U.S. 102, 120 (1996).

In *M.L.B.*, for example, the Supreme Court held that the Mississippi Supreme Court could not bar a mother from appealing a custody order on account of her inability to pay court costs. *Id.* at 106-07. In the Court's view, the government cannot constitutionally deprive citizens of fundamental rights on account of their inability to pay for the process to vindicate those rights. *Id.* at 120 ("The equal protection concern relates to the legitimacy of fencing out would-be appellants based solely on their inability to pay core costs."). Yet under *Devine*, hiring an attorney is for all practical purposes a mandatory entrance fee that impedes a child's access to the courts. *See, e.g.*, Doc. 28 at 4 (1029 Case) ("If Warner intends to appear as a plaintiff to assert his son's claims, Warner must appear through a lawyer."). In contravention of this constitutional right, the counsel mandate acts as a categorical bar on access to the courts for children of low- and middle-income American families who may not be able to afford a lawyer. That result cannot be squared with the Constitution. *See M.L.B.*, 519 U.S. at 120.

Even litigants who abuse the court system have greater access to the courts than J.W. In *Procup v. Strickland*, for example, the district court was

faced with a vexatious prisoner litigant who had "engaged in ridiculously extensive litigation" while serving out his life sentence. 792 F.2d 1069, 1070 (11th Cir. 1986) (en banc). In an attempt to reduce the number of frivolous lawsuits, the district court finally enjoined the litigant from bringing suits pro se. *Id.* Hearing this issue en banc, this Court was concerned that "the requirement that [the litigant] file suits only through an attorney may well foreclose him from filing any suits at all." *Id.* at 1071. Because the bar on pro se representation "effectively enjoin[ed] [the litigant] from filing any suit" whatsoever, this Court held that the district court's requirement was "patently unconstitutional." *Id.*

The judge-made counsel mandate is patently unconstitutional for the same reason. Here, as in *Procup*, the counsel mandate strips J.W. of his right of access to the courts and to petition the government for his grievances, effectively barring him from filing suit at all. As one scholar put it, child litigants face a "Catch-22." *See generally* Martin, *Catch-22*, *supra*. Children cannot appear in court, and their parents cannot represent them in court without an attorney. But many families cannot afford an attorney, and there

is no general right to an attorney in civil cases. *Turner v. Rogers*, 564 U.S. 431, 441 (2011); *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987). Legal aid and pro-bono counsel are not always available, and at any rate their availability is not a constitutionally sufficient substitute for pro se access to the courts. *See Procup*, 792 F.2d at 1070-71. Surely a child's constitutional right to access the courts is at least as potent as a vexatious prisoner litigant who has repeatedly abused the judicial system. If the district court's order in *Procup* was "patently unconstitutional," then so is the counsel mandate. *Id.* at 1071.

### D. The counsel mandate is inconsistent with FRCP 17.

Finally, the counsel mandate is incompatible with Federal Rule of Civil Procedure 17. This is so for two reasons.

First, Rule 17 provides: "The court must appoint a guardian ad litem— *or issue another appropriate order*—to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2) (emphasis added). Though the Rule does not expressly authorize parents to sue pro se on their children's behalf, the Rule necessarily implies (1) at least some duty

on the court's part to protect unrepresented children and (2) the flexibility necessary to do so. The counsel mandate takes the most obvious tool off the table—allowing a parent to proceed pro se for his child—and is thus incompatible with the court's duties under Rule 17(c). Rule 17(c) entrusts this Court—and every federal court—with the duty of safeguarding the rights of minors. The counsel mandate shirks that duty.

Second, Rule 17 can be read to require courts to look to state law to determine whether a parent can sue pro se on behalf of his child. Rule 17 provides that "[c]apacity to sue or be sued is determined . . . by the law of the individual's domicile." Fed. R. Civ. P. 17(b) & (b)(1). Though not a direct command to consult state law on this precise issue, the Rule contemplates reference to state law on these issues generally. In a relatively high-profile case, a Florida appeals court permitted a mother to represent her disabled child in a Medicaid benefits administrative appeal, noting the "absen[ce of] further order or guidance from The Florida Bar or Florida Supreme Court" on whether the mother had committed unauthorized practice of law. *A.C. v. Agency for Health Care Admin.*, 322 So. 3d 1182, 1184 (Fla. Dist. Ct. App. 2019).

27

The court found several factors persuasive, including the mother's "status as natural guardian" and "the parent's duties to care for and protect a minor child," as well as the mother's inability to afford an attorney.  *Id.* at 1183. Thus, to the extent that Rule 17(c) leaves this question for the states to decide, the counsel mandate should be abandoned because Florida already allows parents to represent their children, at least in certain situations.  And to the extent the Court has any doubts about Florida law, the Court should certify the issue to the Florida Supreme Court.  *See* Fla. Const. art. V, § 3(b)(6).

## II.    *Devine* does not control.

The district court erred in following *Devine* for two reasons: **(A)** *Devine*'s narrow holding was overturned by the Supreme Court, and its broad statements have never been adopted by any published decision of this Court; and **(B)** even if *Devine* were controlling, it does not categorically require that parents hire counsel for their child's case.

### A. *Devine* was overruled.

*Devine* is often cited for the proposition that "parents who are not attorneys may not bring a *pro se* action on their child's behalf."  *Devine*, 121

28

F.3d at 582; *see also, e.g., FuQua v. Massey*, 615 F. App'x 611, 612-13 (11th Cir. 2015) (per curiam) (unpublished).   This Circuit's rule of prior panel precedent strictly requires the panel to follow earlier binding precedent.  *See, e.g., United States v. Fritts*, 841 F.3d 937, 942 (11th Cir. 2016); *Smith v. GTE Corp.*, 236 F.3d 1292, 1303 (11th Cir. 2001).

But this rule is inapplicable because the Supreme Court overruled *Devine*.  While the panel in *Devine* made broad, sweeping statements about there being no rule affirmatively requiring the court to let parents represent their children in court, the panel's *holding* was merely that the Individuals with Disabilities Education Act ("IDEA") does not affirmatively give parents a right to represent their children pro se.  121 F.3d at 581 ("We are aware of no authority permitting non-lawyers to represent their children *pro se* in cases brought pursuant to IDEA.").  And on that point, the Supreme Court reversed *Devine*: "The Court of Appeals erred when it dismissed the Winkelman's appeal for lack of counsel.  Parents enjoy rights under IDEA; and they are, as a result, entitled to prosecute IDEA claims on their own

behalf." *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 535 (2007); *see also id*. at 522 (naming *Devine* specifically).[6]

To the best of counsel's knowledge, after *Devine* was overruled, no published Eleventh Circuit opinion has held that parents are categorically barred from representing their children pro se in federal court. There are *unpublished* opinions reinforcing and applying *Devine,*[7] but "[u]npublished

---

[6] Unfortunately, given the Court's narrow holding in *Winkelman*—that IDEA gives parents their own rights to vindicate in court apart from their children—the Court declined to reach the issue presented here, which is whether parents in general could "litigate their child's claims *pro se*." *See* 550 U.S. at 535.

[7] *See Alonso v. Pub. Health Tr. of Miami-Dade Cnty.*, No. 22-14133, 2023 WL 5955117, at *4 n.2 (11th Cir. Sept. 13, 2023) (per curiam) (unpublished) ("As Angie's guardian, Carlos would have had standing to sue on Angie's behalf. However, as a non-attorney, Carlos was not allowed to represent Angie while proceeding *pro se*." (internal citation omitted)); *Thomas v. Leon Cnty. Fire Dep't*, No. 21-13042, 2023 WL 1815509, at *1 n.2 (11th Cir. Feb. 8, 2023) (per curiam) (unpublished) ("The magistrate judge concluded correctly that Thomas was not permitted to appear *pro se* on behalf of her adult daughter in this civil action."); *Alonso v. Alonso*, No. 22-10607, 2023 WL 309588, at *2 (11th Cir. Jan. 19, 2023) ("[W]e grant Gladys's motion in part and dismiss the appeal to the extent that Carlos and Morejon attempt to act as pro se legal counsel for Angie on appeal."); *Grappell v. Carvalho*, 847 F. App'x 698, 701 (11th Cir. 2021) (per curiam) (unpublished) ("Accordingly, to the extent Grappell, a non-attorney, sought to represent the legal interests of her son, the district court should have dismissed those claims without prejudice.");

opinions are not binding precedent." *United States v. Izurieta*, 710 F.3d 1176,

1179 (11th Cir. 2013); *see* 11th Cir. R. 36-1. *Devine*, therefore, is not binding.[8]

---

*Miller v. Byers*, 833 F. App'x 225, 226 n.1 (11th Cir. 2020) (per curiam) (unpublished) (affirming dismissal of § 1983 claim because father could not represent his son pro se in lawsuit); *Dingler v. Georgia*, 725 F. App'x 923, 926 (11th Cir. 2018) (per curiam) (unpublished) ("[W]e consider only Plaintiff's claims raised on his own behalf because a non-attorney *pro se* litigant cannot bring any action on behalf of his or her child."); *FuQua v. Massey*, 615 F. App'x at 613 ("Here, the district court properly granted the motion to dismiss because FuQua sought to represent her minor daughter, but, as a non-attorney, she was not permitted to do so."); *Whitehurst v. Wal-Mart Stores E., L.P.*, 329 F. App'x 206, 208 (11th Cir. 2008) (per curiam) (unpublished) ("Whitehurst further asserts that he could advocate for his family. We disagree."); *Whitehurst v. Wal-Mart*, 306 F. App'x 446, 448-49 (11th Cir. 2008) (per curiam) (unpublished) ("[A] non-lawyer parent has no right to *represent* a child in an action in the child's name.").

[8] True, *Devine* has been favorably cited in one published case, but this case arose outside of the parent-child context. *See Iriele v. Griffin*, 65 F.4th 1280, 1288 (11th Cir. 2023) (prohibiting pro se representation of estate when one is not the only beneficiary). There are also unpublished cases outside of the parent-child context that cite *Devine* favorably. *See White v. United States*, No. 22-13736, 2023 WL 3885816, at *1 (11th Cir. June 8, 2023) (per curiam) (unpublished) (husband cannot represent wife); *Mantz ex rel. Dunkley v. Soc. Sec. Admin., Comm'r*, No. 21-12789, 2022 WL 2859460, at *2 (11th Cir. July 21, 2022) (per curiam) (unpublished) (grandparent cannot represent grandson); *Franklin v. Garden State Life Ins.*, 462 F. App'x 928, 930 (11th Cir. 2012) (per curiam) (unpublished) (administratrix and estate). Those cases are doubly inapplicable—they concern a different issue and have no precedential value.

## B. *Devine* did not purport to be a blanket ban.

Separately, *Devine* does not control because it did not hold that *dismissal* of the child's claims was the proper remedy for a child who lacks counsel. *Devine* dealt with a parent's emergency motion to allow the child's attorneys to withdraw and to allow the parent to represent his autistic child without counsel, and the panel simply affirmed denial of the motion. *See* 121 F.3d at 577, 582. Yet courts cite *Devine* for the proposition that children's claims must be dismissed if they are not represented by counsel. *See, e.g.*, *Grappell v. Carvalho*, 847 F. App'x at 701 (citing *Devine* and holding that "to the extent [a parent], a non-attorney, sought to represent the legal interests of her son, the district court should have dismissed those claims without prejudice"). Indeed, that happened here: "If Warner intends to appear as a plaintiff to assert his son's claims, Warner must appear through a lawyer. No later than JULY 28, 2023, *a lawyer must appear, or an order will dismiss this action without further notice*." Doc. 28 at 4 (1029 Case) (emphasis added) (boldface omitted).

32

The problem is: no published decision of this Court requires that this rule be applied reflexively. Even *Devine* did not purport to establish an ironclad bar to parental representation, admitting of no exceptions. Yet unpublished decisions of this Court have applied *Devine* in this way. *See, e.g.*, *Whitehurst*, 306 F. App'x at 448-49 ("[A] non-lawyer parent has no right to *represent* a child in an action in the child's name."); *see also, e.g.*, *Oliver v. Southcoast Med. Grp., LLC*, No. CV411-115, 2011 WL 2600618, at *2 (S.D. Ga. June 13, 2011) (automatically dismissing child's medical-malpractice and civil-rights claims because the child's indigent parent, though likely competent to proceed with the representation, was "not a lawyer"), *report and recommendation adopted*, No. CV411-115, 2011 WL 2600566 (S.D. Ga. June 29, 2011).

Other courts have chosen to apply the counsel mandate as a rule of thumb, permitting exceptions where parental representation would better serve the child's interests. *See, e.g.*, *T.R.B. by & through Green v. Berryhill*, No. CV419-068, 2019 WL 2202785, at *2 (S.D. Ga. May 21, 2019) (citing out-of-circuit precedent, permitting an exception to the counsel mandate because

parental prosecution of the disabled child's rights was "the best, if not the only, way to protect the child's rights" in this case for which the parent was unemployed and sought IFP status). At a minimum, this Court should—indeed, in light of the constitutional concerns listed above, this Court must—adopt this flexible approach instead of the ironclad interpretation of the counsel mandate.

## CONCLUSION

In sum, Warner respectfully requests that the Court reverse the judgment of the district court.

Dated: November 24, 2023                Respectfully submitted,

                                        /s/ *Matthew Erickson*
                                        BAKER BOTTS L.L.P.

Jeffrey C. Mateer                       Matthew P. Erickson
Hiram S. Sasser, III                    Matthew M. Hilderbrand
David J. Hacker                         **BAKER BOTTS L.L.P.**
Justin E. Butterfield                   401 South 1st Street, Suite 1300
**FIRST LIBERTY INSTITUTE**             Austin, Texas 78704-1296
2001 W. Plano Pkwy., Suite 1600         Tel: 512.322.2500
Plano, Texas 75075                      Fax: 512.322.2501
Tel: 972.941.4444                       matthew.erickson@bakerbotts.com
Fax: 972.941.4457                       matthew.hilderbrand@bakerbotts.com
jbutterfield@firstliberty.org
hsasser@firstliberty.org                Aaron M. Streett
                                        **BAKER BOTTS L.L.P.**
                                        910 Louisiana Street
                                        Houston, Texas 77002-4995
                                        Tel: 713.229.1234
                                        Fax: 713.229.1522
                                        aaron.streett@bakerbotts.com

                                        *Attorneys for Plaintiff-Appellant*
                                        *Blake Warner*

35

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the page and type-volume limitations of Fed. R. App. P. 32(a)(7), because it contains 8,523 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and with the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typespace using 14-point Palatino Linotype.

*/s/  Matthew Erickson*
Matthew P. Erickson

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2023, I electronically filed this brief and thereby served all counsel of record through the Court's CM/ECF system.

_/s/  Matthew Erickson_

Matthew P. Erickson
