Nos. 23-12408-E & 23-12411-J (consolidated)

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

◆

BLAKE WARNER,
*Plaintiff-Appellant,*

v.

SCHOOL BOARD OF HILLSBOROUGH COUNTY, FLORIDA,
*Defendant-Appellee.*

◆

On Appeal from the United States District Court
for the Middle District of Florida
(8:23-cv-00181-SDM-JSS & 8:23-cv-01029-SDM-SPF)

## PETITION FOR REHEARING EN BANC

Jeffrey C. Mateer
Hiram S. Sasser, III
David J. Hacker
Justin E. Butterfield
**FIRST LIBERTY INSTITUTE**
2001 W. Plano Pkwy., Suite 1600
Plano, Texas 75075
Tel: 972.941.4444
Fax: 972.941.4457
jbutterfield@firstliberty.org
hsasser@firstliberty.org

Aaron M. Streett
**BAKER BOTTS L.L.P.**
910 Louisiana Street
Houston, Texas 77002-4995
Tel: 713.229.1234
Fax: 713.229.1522
aaron.streett@bakerbotts.com

Matthew P. Erickson
Matthew M. Hilderbrand
**BAKER BOTTS L.L.P.**
401 South 1st Street, Suite 1300
Austin, Texas 78704-1296
Tel: 512.322.2500
Fax: 512.322.2501
matthew.erickson@bakerbotts.com
matthew.hilderbrand@bakerbotts.com

*Attorneys for Appellant Blake Warner*

Nos. 23-12408-E and 23-12411-J (consolidated)

*Warner v. School Board of Hillsborough County*, Florida

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 21.1-1, the undersigned counsel certifies that the following listed persons and parties may have an interest in the outcome of this case:

1. **AKERMAN LLP** (Attorneys for Appellee)

2. **BAKER BOTTS L.L.P.** (Attorneys for Appellant)

3. **BUTTERFIELD, Justin** (Attorney for Appellant)

4. **ERICKSON, Matthew P.** (Attorney for Appellant)

5. **FIORE, Kristen M.** (Attorney for Appellee)

6. **FIRST LIBERTY INSTITUTE** (Attorneys for Appellant)

7. **FLYNN, Hon. Sean P.** (U.S. Magistrate Judge, M.D. Fla.)

8. **HACKER, David J.** (Attorney for Appellant)

9. **HILDERBRAND, Matthew M.** (Attorney for Appellant)

10. **J.W.** (Minor child of Appellant)

11. **MATEER, Jeffrey C.** (Attorney for Appellant)

Nos. 23-12408-E and 23-12411-J (consolidated)
*Warner v. School Board of Hillsborough County, Florida*

12.  **MARGOLIN, Jason L.** (Attorney for Appellee)

13.  **MERRYDAY, Hon. Steven D.** (U.S. District Judge, M.D. Fla.)

14.  **SASSER, Hiram** (Attorney for Appellant)

15.  **SCHOOL BOARD OF HILLSBOROUGH COUNTY, FL** (Appellee)

16.  **SNEED, Hon. Julie S.** (U.S. Magistrate Judge, M.D. Fla.)

17.  **STREETT, Aaron M.** (Attorney for Appellant)

18.  **WARNER, Blake Andrew** (Appellant)

The undersigned also certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

## RULE 35(B) STATEMENT

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance:  Whether a child litigant's claims may be dismissed for lack of counsel when the child's parent stands ready to represent the child pro se.

*/s/ Matthew P. Erickson*
Matthew P. Erickson

*Attorney of Record for Appellant*
*Blake Warner*

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement..........C-1

Rule 35(b) Statement ................................................................................ i

Table of Citations ................................................................................ iv

Statement of the Issue................................................................................1

Statement of the Case ................................................................................1

      1.     Warner brings his child's claims pro se................................1

      2.     The district court denies Warner pro se status and dismisses the child's claims for lack of counsel...................2

      3.     Bound by circuit precedent, the panel affirms ...................2

Summary of the Argument.....................................................................4

Argument .............................................................................................6

I.     The judge-made counsel mandate is inconsistent with the statutory and constitutional rights of child litigants and parents. .............................................................................6

     A.    *Devine*'s interpretation of 28 U.S.C. § 1654 is internally inconsistent...........................................................6

     B.    The counsel mandate is inconsistent with Federal Rule of Civil Procedure 17. ................................................8

     C.    The counsel mandate violates Warner's and J.W.'s constitutional rights. ........................................................10

         (i)    Parental rights .............................................................10

         (ii)   The right to self-representation ................................12

(iii)    The right to access the courts ....................................13

D.    The counsel mandate's policy-driven is self-defeating because, while originally intended to protect children's legal rights, the mandate bars many children from court altogether. ..........................................................................17

Conclusion..............................................................................................18

Certificate of Compliance ...................................................................20

Certificate of Service ..........................................................................21

## TABLE OF CITATIONS

**Page(s)**

CASES

*A.C. v. Agency for Health Care Admin.*,
    322 So. 3d 1182 (Fla. Dist. Ct. App. 2019) ........................................9

*Bellotti v. Baird*,
    443 U.S. 622 (1979) ..............................................................................13

*Bounds v. Smith*,
    430 U.S. 817 (1977) ..........................................................................5, 16

*Devine v. Indian River Cty. Sch. Bd.*,
    121 F.3d 576 (11th Cir. 1997), *overruled in part by Winkelman
    ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007) ...........*passim*

*Faretta v. California*,
    422 U.S. 806 (1975) ..........................................................................4, 12

*M.L.B. v. S.L.J.*,
    519 U.S. 102 (1996) ........................................................................13, 14

*Parham v. J.R.*,
    442 U.S. 584 (1979) ..............................................................................12

*Poole v. Lambert*,
    819 F.2d 1025 (11th Cir. 1987) (per curiam) ................................15, 17

*Procup v. Strickland*,
    760 F.2d 1107 (11th Cir. 1985), *vacated on reh'g en banc*, 792 F. 2d
    1069 ......................................................................................................16

*Procup v. Strickland*,
    792 F.2d 1069 (11th Cir. 1986) (en banc) (per curiam) ..................6, 14, 15

*Raskin ex rel. JD v. Dall. Indep. Sch. Dist.*,
    69 F.4th 280 (5th Cir. 2023)..............................................................3, 7, 11, 12

*Tindall v. Poultney High Sch. Dist.*,
    414 F.3d 281 (2d Cir. 2005) .........................................................................5, 18

*Troxel v. Granville*,
    530 U.S. 57 (2000)...........................................................................................10

*Turner v. Rogers*,
    564 U.S. 431 (2011).........................................................................................15

*Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*,
    550 U.S. 516 (2007)...........................................................................................4

## STATUTES AND RULES

28 U.S.C. § 1654.........................................................................................*passim*

Fed. R. Civ. P. 17(b)(1) .............................................................................9, 13

Fed. R. Civ. P. 17(c)(2)...................................................................................8

Fla. Const. art. V, § 3(b)(6) ...........................................................................9

Fla. R. Civ. P. 1.210(b) .................................................................................13

Judiciary Act of 1789, ch. 20, 1 Stat. 73.....................................................4, 6

## OTHER AUTHORITIES

Lisa V. Martin, *No Right to Counsel, No Access Without: The Poor Child's
    Unconstitutional Catch-22*, 71 Fla. L. Rev. 831 (2019) ...................................15

## STATEMENT OF THE ISSUE

All litigants have the statutory and constitutional right to represent themselves in federal court.  But many courts, including this one, have carved out an exception for minors.  *See Devine v. Indian River Cty. Sch. Bd.*, 121 F.3d 576, 582 (11th Cir. 1997), *overruled in part by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007).  As a result, a child's claim will be dismissed if the child's parent or guardian cannot afford to hire counsel.  The child's parent, though standing in the child's shoes before the court, has no right to plead the child's case before the court.  Should this judge-made rule be overturned?

## STATEMENT OF THE CASE

### 1.    Warner brings his child's claims pro se

Blake Warner, a black man acting on behalf of himself and his minor child, J.W., brought this (now-consolidated) lawsuit pro se against the Hillsborough County School Board.  Warner alleged that as a result of the School Board's redistricting process, the school districts had become more racially segregated.  As a result, J.W. would be assigned to a more distant, minority-majority school even though there is a closer and higher-

performing, majority-white school (which he was not permitted to attend). **Op. 3-4**.

### 2. The district court denies Warner pro se status and dismisses the child's claims for lack of counsel

The district court denied Blake Warner, a non-lawyer, the right to represent J.W. without hiring a lawyer. **Op. 5.** The court then dismissed J.W.'s claims and instructed that the child's case would be reopened only if Warner returns with a lawyer. **Op. 5-6.** At no point does the district court's order discuss whether Warner could afford counsel, whether the case was too complex for Warner to handle without a lawyer, or whether other steps short of dismissal were appropriate.

### 3. Bound by circuit precedent, the panel affirms

On appeal, the panel affirmed. Represented by pro bono counsel for purposes of this appeal, Warner argued that requiring him to obtain a lawyer to press his child's claims in federal court is inconsistent with his statutory and constitutional rights, as well as those of J.W. But, finding itself bound by this Court's prior decision in *Devine*, 121 F.3d 576, the panel held that "a parent cannot represent a child *pro se*." **Op. 7.**

Before concluding, the panel acknowledged Warner's "appealing policy argument," which pointed out that the Circuit has effectively "created a 'counsel mandate.'"  **Op. 9.**  On the one hand, "under both federal and Florida law, children cannot sue on their own because they lack legal capacity."  **Op. 9.**  And on the other hand, "parents cannot represent their children *pro se*."  **Op. 9.**  The result is that "parents must pay the piper or forfeit the fight."  **Op. 9.**  While Warner did note that the counsel mandate betrayed the very policy-driven rationale that motivated it, he also argued that the counsel mandate violated federal statutes, violated the Federal Rules of Civil Procedure, and violated the U.S. Constitution.

The panel also highlighted Judge Oldham's separate opinion in a recent case out of the Fifth Circuit, which observed that the counsel mandate is inconsistent with American history and tradition and "offers minors a Hobson's choice: litigate with counsel, or don't litigate at all."  **Op. 10** (quoting *Raskin ex rel. JD v. Dall. Indep. Sch. Dist.*, 69 F.4th 280, 294 (5th Cir. 2023) (Oldham, J., dissenting in part)).  Reiterating that it was "bound by our precedent, which holds that a parent may not advance his child's cause of

3

action *pro se*," however, the panel was forced to "affirm the district court's dismissal of Warner's claims on behalf of J.W." **Op. 10.**

Warner respectfully requests rehearing en banc so that the full Court may consider overturning *Devine*.

## SUMMARY OF THE ARGUMENT

Every citizen in this country has the right to access the courts without counsel—except children. In federal court, "parties may plead and conduct their own cases personally or by counsel." 28 U.S.C. § 1654. This statutory right is grounded in the American tradition, "the notion of compulsory counsel [being] utterly foreign to [the Founders.]" *Faretta v. California*, 422 U.S. 806, 833 (1975). All Americans have had the right to appear in court without a lawyer since the Judiciary Act of 1789.

In the name of protecting the legal rights of children from their "unskilled, if caring, parents," in 1997, this Court carved out an exception for children in IDEA cases. *Devine*, 121 F.3d 582 & n.19. And although *Devine* was overruled—in Warner's view in *relevant* part—by a later decision of the U.S. Supreme Court, *see Winkelman*, 550 U.S. at 535, panels of this Court have

continued to apply *Devine* in unpublished opinions over the past two decades. Ironically, even though the counsel mandate was devised "to ensure that children rightfully entitled to legal relief are not deprived of their day in court" by their parents, *Devine*, 121 F.3d at 582, it betrays that very policy by "forc[ing] minors out of court altogether," *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 286 (2d Cir. 2005).

*Devine*'s paternalistic instinct is not just bad policy: it is anathema to the Constitution. A judge-made rule that forces parents to hire a lawyer in every case, whether doing so is warranted or not, puts courts in between children and their parents. This deprives parents of their constitutional right to make critical decisions concerning the care, custody, and control of their kids. It also violates the child's statutory and constitutional rights. The law gives everyone the right to proceed *without* counsel. Finally, barring a child's access to the courthouse simply because her parent cannot afford (or does not trust) a lawyer is not fair—courts have recognized that even *prisoners* and litigants who abuse the judicial system have greater constitutional rights than this. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977) (state must take

5

affirmative steps to ensure prisoners have access to the courts); *Procup v. Strickland*, 792 F.2d 1069, 1070 (11th Cir. 1986) (en banc) (per curiam) (court could not require serial abuser of the court system to proceed only with a lawyer). A judge-made rule that categorically denies low- and mid-income children and their parents the right to access the courts is undoubtedly of great significance.

This Court should take this case en banc—not just because *Devine* rests on shaky analytical foundations, but also so that this court can consider the important constitutional issues posed by *Devine* for the first time.

## ARGUMENT

### I.    The judge-made counsel mandate is inconsistent with the statutory and constitutional rights of child litigants and parents.

#### A.    *Devine*'s interpretation of 28 U.S.C. § 1654 is internally inconsistent.

Since the creation of the federal judiciary, all litigants have had the right to appear in court without an attorney. The Judiciary Act of 1789 provided that "in all the courts of the United States, the parties may plead and manage their own causes personally or by the assistance of . . . counsel." Judiciary Act of 1789, ch. 20, 1 Stat. 73, 92. The statute's modern formulation

is equivalent: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel . . . ."  28 U.S.C. § 1654.

According to *Devine*, though, § 1654 only speaks to a party's ability to litigate their case without counsel, and thus "does not speak to the issue [of] . . . whether Devine may plead or conduct his son's case."  *Devine*, 121 F.3d at 581.  This is similar to the argument advanced by the majority of a recent Fifth Circuit panel.  *See Raskin*, 69 F.4th at 283 (reasoning that "[t]his case starts and ends with the text" of the act which says that "parties may plead and conduct *their own* cases personally or by counsel," and not those of their children (emphasis added) (quoting 28 U.S.C. § 1654)).

But as Judge Oldham noted, dissenting in *Raskin*, "the phrase 'their own' modifies both 'personally' and 'by counsel.'  If the children's claims aren't Ms. Raskin's 'own,' then what authority does § 1654 give Ms. Raskin to exercise her children's 'own' option to proceed 'by counsel'?"  *Id.* at 297 (Oldham, J., dissenting) (emphasis omitted).  Judge Oldham is right.  If the majority's textual analysis is correct, then parents cannot litigate their children's claims at all—neither personally nor by counsel.  And nobody

7

argues that is what § 1654 means. Thus, at worst, § 1654 is silent as to whether parents may exercise their child's right of self-representation—which § 1654 gives to all "parties"—on their behalf. And particularly in light of the aforementioned history underlying § 1654, the better interpretation is that it announces a general policy that parties may choose whether or not to hire counsel.

### B. The counsel mandate is inconsistent with Federal Rule of Civil Procedure 17.

Even if § 1654 is ambiguous, Federal Rule of Civil Procedure 17 is not. The counsel mandate violates this rule in two ways. First, Rule 17 instructs that "[t]he court *must* appoint a guardian ad litem—*or issue another appropriate order*—to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2) (emphases added). There are two ways that courts could theoretically discharge this duty: (1) they could appoint a lawyer, or (2) they could permit a parent to represent their child's interests. But, as a practical matter, the first option is almost never on the table. By removing the second option as well, the counsel mandate shirks the judiciary's Rule 17 duty to protect unrepresented

minors.  Dismissing a child's claim for the crime of not having a lawyer, often prejudicing the child permanently due to mootness (which is what will happen here), is a strange way of discharging that duty.

Second, Rule 17 is best read as requiring courts to look to state law to determine whether a parent can sue pro se on behalf of his child.  It provides that "[c]apacity to sue or be sued is determined . . . by the law of the individual's domicile."   Fed. R. Civ. P. 17(b)(1).  Though not a direct command to consult state law on this precise issue, the Rule contemplates reference to state law on these issues generally.  And in Florida, parents are permitted to represent their child's claims pro se, at least under certain circumstances.  *See, e.g.*, *A.C. v. Agency for Health Care Admin.*, 322 So. 3d 1182, 1184 (Fla. Dist. Ct. App. 2019) (permitting a parent to represent her child in a Medicaid benefits case).  To the extent that the Court has any doubts about Florida law, the Court should certify the issue to the Florida Supreme Court. *See* Fla. Const. art. V, § 3(b)(6).  A claim should not be dismissed just because it was brought in (or removed to) federal court, if it could proceed in state court.

### C.    The counsel mandate violates Warner's and J.W.'s constitutional rights.

The counsel mandate impermissibly forces child litigants to choose between hiring a lawyer and not pursuing their claims at all.  Because not everyone can afford counsel, and because not every case warrants the expense, children are frequently unable to pursue their claims at all.  While the panel below characterized this as  an "appealing policy argument," **Op. 9**, in fact, it is more: it violates the constitutional rights of both child litigants and their parents.  At least three such rights are violated here, none of which were considered in *Devine* or any other precedent of this Court.

### (i)    Parental rights

Parents possess a fundamental liberty interest in the "care, custody, and control of their children."  *Troxel v. Granville*, 530 U.S. 57, 65 (2000).  "[T]he Due Process Clause does not permit [the government] to infringe on the fundamental right of parents to make child rearing decisions simply because a . . . judge believes a 'better' decision could be made."  *Id.* at 72-73.

The counsel mandate does exactly that: because a panel of judges believed that lawyers would do a better job, they created a blanket rule

10

requiring parents to hire a lawyer or refrain from vindicating their child's rights at all. *See Devine*, 121 F.3d at 582 (justifying the counsel mandate as necessary to "ensure that children rightfully entitled to legal relief are not deprived of their day in court by unskilled, if caring, parents"). But the counsel mandate cares not that lawyers vary widely in skill and competence, as do parents. Take a recent case from the Fifth Circuit, for example. There, a pro se mother "filed two excellent briefs," "properly filed the Record Excerpts," and even "presented oral argument in front of [the Fifth Circuit] panel." *Raskin*, 69 F.4th at 288 (Oldham, J., dissenting). Parents who are not lawyers can still be "passionate and effective advocate[s]" for their children even if they have not passed the bar exam. *Id.*

Forcing counsel upon unwilling parents also interferes with a parent's right to make critical or life-changing decisions for the child. *Devine* itself is a great example. There, the parent moved to allow his child's counsel to withdraw and to allow the parent to continue representation pro se, "citing undisclosed differences" with counsel. 121 F.3d at 578. Indeed, it is not hard to imagine situations in which a lawyer's single-track duty to advance his

client's immediate legal interests would conflict with a parent's multifaceted duty to safeguard and direct her child's welfare and upbringing.  This is why the law presumes that "parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions" and that "parents . . . act in the best interests of their children."  *Parham v. J.R.*, 442 U.S. 584, 602 (1979).  The same cannot necessarily be said of lawyers.

### (ii)    The right to self-representation

Just like § 1654, the Constitution enshrines a fundamental right to self-representation.  This constitutional right is deeply rooted in the American legal tradition, stemming back to the colonists' "appreciation of the virtues of self-reliance and a traditional distrust of lawyers."  *Faretta*, 422 U.S. at 826 (recognizing the deeply rooted right of self-representation); *see also Raskin*, 69 F.4th at 290-92 (Oldham, J., dissenting in part) (recounting the history of the right).  Indeed, "the notion of compulsory counsel was utterly foreign to [the Founders.]"  *Faretta*, 422 U.S. at 833.  And "[a] child, merely on account

12

of his minority, is not beyond the protection of the Constitution." *Bellotti v. Baird*, 443 U.S. 622, 633 (1979) (plurality opinion).

The counsel mandate strips child litigants of their constitutional right to self-representation. Here, the district court told J.W. to come back with a lawyer—or not at all. Doc. 28 at 4 (1029 Case). That violated J.W.'s constitutional right to proceed without one.

### (iii)  The right to access the courts

Moreover, in tandem with rules providing that children lack legal capacity to appear in court, *see* Fed. R. Civ. P. 17(b)(1); Fla. R. Civ. P. 1.210(b), this Court's counsel mandate effectively bars many children's claims from federal court altogether if their parents cannot afford to hire a lawyer. The Constitution does not allow this.

In *M.L.B. v. S.L.J.*, for example, the Supreme Court held that the Mississippi Supreme Court could not bar a mother from appealing a custody order on account of her inability to pay court costs. 519 U.S. 102, 106-07 (1996). In the Court's view, the government cannot constitutionally deprive citizens of fundamental rights on account of their inability to pay for the

13

process to vindicate those rights. *Id.* at 120 ("The equal protection concern relates to the legitimacy of fencing out would-be appellants based solely on their inability to pay core costs."). Yet under *Devine*, hiring an attorney is for all practical purposes a mandatory entrance fee, without which a child's access to the courts is barred. *See, e.g.*, Doc. 28 at 4 (1029 Case) ("If Warner intends to appear as a plaintiff to assert his son's claims, Warner must appear through a lawyer."). If anything, this case is worse than *M.L.B.*—attorney's fees are generally much greater than filing fees. In contravention of this constitutional right, the counsel mandate acts as a categorical bar on access to the courts for children of low- and middle-income American families who may not be able to afford a lawyer. Such a result cannot be squared with the Constitution. *See M.L.B.*, 519 U.S. at 120.

Even litigants who abuse the court system have greater access to the courts than children like J.W. In *Procup* for example, the district court was faced with a vexatious prisoner litigant who had "engaged in ridiculously extensive litigation" while serving out his life sentence. 792 F.2d at 1070. In an attempt to reduce the number of frivolous lawsuits, the district court

finally enjoined the litigant from bringing suits pro se. *Id.* Hearing this issue en banc, this Court was concerned that "the requirement that [the litigant] file suits only through an attorney may well foreclose him from filing any suits at all." *Id.* at 1071. Because the bar on pro se representation "effectively enjoin[ed the litigant] from filing any suit" whatsoever, this Court held that the court's requirement was "patently unconstitutional." *Id.*

The judge-made counsel mandate is "patently unconstitutional" for the same reason. *Id.* Here, as in *Procup*, the counsel mandate strips J.W. of his right of access to the courts and to petition the government for his grievances, effectively barring him from filing suit at all. As one scholar put it, child litigants face a "Catch-22." *See generally* Lisa V. Martin, *No Right to Counsel, No Access Without: The Poor Child's Unconstitutional Catch-22*, 71 Fla. L. Rev. 831 (2019). Children cannot appear in court, and their parents cannot represent them in court without an attorney. But many families cannot afford an attorney, and there is no general right to an attorney in civil cases. *Turner v. Rogers*, 564 U.S. 431, 441 (2011); *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987) (per curiam). Legal aid and pro-bono counsel are not always

available, and at any rate their availability is not a constitutionally sufficient substitute for pro se access to the courts. *See Procup v. Strickland*, 760 F.2d 1107, 1113 (11th Cir. 1985), *vacated on reh'g en banc*, 792 F. 2d 1069. Thus, the counsel mandate suffers from the same constitutional defect as the injunction in *Procup*: It effectively bars litigants of modest means from court. If anything, *Devine*'s counsel mandate is much worse. It imposes an unconstitutional condition on a whole class (rather than just one person) who have done no wrong (unlike the serial abuser of the judicial system in *Procup*). Surely prisoners who repeatedly file meritless claims do not have more potent constitutional rights than children. *See also Bounds*, 430 U.S. at 821 (state must take affirmative steps to ensure prisoners have adequate access to the courts).

Neither *Devine* nor any other precedent of this Court has considered these three constitutional issues with the counsel mandate. This Court should grant review to consider them for the first time.

16

**D.    The counsel mandate's policy-driven is self-defeating because, while originally intended to protect children's legal rights, the mandate bars many children from court altogether.**

*Devine* primarily rested not on law but on policy: "parents who are not attorneys may not bring a *pro se* action on their child's behalf—. . . [this rule ] helps to ensure that children rightfully entitled to legal relief are not deprived of their day in court by unskilled, if caring, parents." 121 F.3d at 581.

Despite the best intentions, this rationale backfires and causes what it was supposed to prevent—it "deprive[s children] of their day in court." *Id.* Because there is no right to counsel in civil matters, *Poole*, 819 F.2d at 1028, courts in the Eleventh Circuit wind up *dismissing* children's claims for lack of counsel.  This case exemplary.  Doc. 28 at 4 (1029 Case) ("No later than JULY 28, 2023, a lawyer must appear, or an order will dismiss this action without further notice.").

The irony is inescapable.  A judge-made policy decision designed to ensure children have the best advocates for their claims ends up barring their claims altogether.  As the Second Circuit has observed, while "the rule stems

largely from our desire to protect the interests of minors," "it may, in some instances, undermine a child's interest in having claims pursued for him or her when counsel is as a practical matter unavailable." *Tindall*, 414 F.3d at 286. "[I]n the appeal before us—it may force minors out of court altogether." *Id.* This Court faces another such case here. At a minimum, litigants would benefit from having at least one carefully reasoned, published opinion as opposed to a series of unpublished ones resting on a quarter-century-old, half-abrogated case.

## CONCLUSION

For these reasons, Warner respectfully requests that the Court grant rehearing en banc.

Dated: June 12, 2024

Respectfully submitted,

/s/ *Matthew P. Erickson*

BAKER BOTTS L.L.P.

Jeffrey C. Mateer
Hiram S. Sasser, III
David J. Hacker
Justin E. Butterfield
**FIRST LIBERTY INSTITUTE**
2001 W. Plano Pkwy., Suite 1600
Plano, Texas 75075
Tel: 972.941.4444
Fax: 972.941.4457
jbutterfield@firstliberty.org
hsasser@firstliberty.org

Matthew P. Erickson
Matthew M. Hilderbrand
**BAKER BOTTS L.L.P.**
401 South 1st Street, Suite 1300
Austin, Texas 78704-1296
Tel: 512.322.2500
Fax: 512.322.2501
matthew.erickson@bakerbotts.com
matthew.hilderbrand@bakerbotts.com

Aaron M. Streett
**BAKER BOTTS L.L.P.**
910 Louisiana Street
Houston, Texas 77002-4995
Tel: 713.229.1234
Fax: 713.229.1522
aaron.streett@bakerbotts.com

*Attorneys for Plaintiff-Appellant*
*Blake Warner*

19

## CERTIFICATE OF COMPLIANCE

I hereby certify that this petition complies with the page and type-volume limitations of Fed. R. App. P. 35(b)(2)(A), because it contains 3,466 words, excluding parts of the petition exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 35-5.  This petition also complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and with the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using 14-point Palatino Linotype.

_/s/ Matthew P. Erickson_
Matthew P. Erickson

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2024, I electronically filed this brief and

thereby served all counsel of record through the Court's CM/ECF system.

*/s/ Matthew P. Erickson*
Matthew P. Erickson

[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12408

Non-Argument Calendar

_____

BLAKE ANDREW WARNER,

Plaintiff-Appellant,

*versus*

SCHOOL BOARD OF HILLSBOROUGH COUNTY, FLORIDA,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:23-cv-00181-SDM-JSS

_____

2                        Opinion of the Court                    23-12408

––––––––––––––––––––––

No. 23-12411

Non-Argument Calendar

––––––––––––––––––––––

BLAKE ANDREW WARNER,

                                                    Plaintiff-Appellant,

*versus*

SCHOOL BOARD OF HILLSBOROUGH COUNTY,
FLORIDA,

                                                    Defendant-Appellee.

––––––––––––––––––––––

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:23-cv-01029-SDM-SPF

––––––––––––––––––––––

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Blake Warner, acting on behalf of himself and his minor child, J.W., sued the School Board of Hillsborough County in two

separate actions both alleging that the School Board engages in racially discriminatory districting practices.[1]  The district court dismissed the action brought by Warner's minor child because Warner, as a nonlawyer, could not represent his minor child *pro se*. Warner appeals the order dismissing his minor child's claims.  For the reasons that follow, we affirm.

## I.        FACTUAL AND PROCEDURAL BACKGROUND

Warner's child, J.W., is a Black student in the Hillsborough County school system.  On January 26, 2023, Warner, acting *pro se* and asserting claims for both himself and J.W., filed the 181 Case alleging that the School Board intentionally segregated students by race.  The School Board achieved this, Warner says, by strategically drawing district boundaries along demographic lines resulting in a discriminatory effect on minority students, including J.W.  According to Warner, these districting decisions caused minority students to be assigned to lower-performing schools while white students were assigned to higher-performing schools.  The School Board moved to dismiss the complaint for lack of subject-matter jurisdiction, which the district court denied.

---

[1] Warner filed two separate cases, both alleging similar facts and harms.  *See Warner v. School Board of Hillsborough County, Florida*, No. 23-cv-181 (M.D. Fla.) and *Warner v. School Board of Hillsborough County, Florida*, No. 23-cv-1029 (M.D. Fla.).  Where the distinction does not matter, we refer to these together as "Warner's cases" and, where the distinction does matter, we refer to them separately as "the 181 Case" and "the 1029 Case."

4                    Opinion of the Court                    23-12408

A few days after the district court denied the motion to dismiss in the 181 Case, Warner filed a separate complaint, initiating the 1029 Case. There, Warner alleged that the School Board made additional changes to district boundaries since the commencement of the 181 Case, causing J.W. to have to choose between "a failing racially segregated school in his community" or "driving approximately two hours per day to distant schools" for the 2023–24 school year. In sum, Warner alleged, the School Board's new redistricting created a greater degree of segregation by assigning J.W. to a further-away, minority-majority school despite there being a closer and higher-performing, majority-white school that he was not permitted to attend.

Warner then filed a notice of related action and a motion to consolidate in the 181 Case, informing the district court of his 1029 Case. Without ruling on the motion to consolidate in the 181 Case, the district court entered an order to show cause in the 1029 Case, directing Warner to demonstrate why that case should not be dismissed for improper claim-splitting. Warner responded, explaining that the 181 Case alleged past harms, while the 1029 Case alleged future harms for the then-upcoming school year based on J.W.'s new school placement. At the same time, Warner amended his complaint in the 181 Case and the School Board filed its answer.

Two weeks later, before the district court took any action on the show-cause order, the School Board moved to dismiss the complaint in the 1029 Case. There, the School Board argued that Warner engaged in improper claim splitting, his claims were

23-12408               Opinion of the Court                    5

barred by a previous settlement agreement, and he failed to state a
claim.  After full briefing from the parties, the district court granted
the motion and dismissed the complaint in the 1029 Case.  In that
order, the district court explained two bases for its ruling: first, it
found that Warner improperly split his claims between the two
cases, both of which involved the same plaintiffs, the same defend-
ant, and closely interrelated claims of school segregation.  Further,
the district court reasoned, discovery in both cases would overlap
and would form "a convenient trial unit."  Finally, while the inju-
ries alleged in each case reportedly occurred at different times, they
arose from the same allegedly ongoing segregation scheme.  As a
second independent basis for dismissal, the district court sua sponte
raised the issue of Warner's *pro se* representation of his son, J.W.
Citing our decisions in *FuQua v. Massey*, 615 F. App'x 611 (11th Cir.
2015) and *Devine v. Indian River County School Board*, 121 F.3d 576
(11th Cir. 1997), the district court determined that Warner was not
permitted to assert his minor child's claims *pro se* and would need
to appear through a lawyer to pursue an action on J.W.'s behalf.
For these reasons, the district court dismissed both of Warner's
complaints[2] without prejudice and afforded him the opportunity to
file an amended complaint in the 181 Case asserting all of his own
claims there.[3]  As for J.W.'s claims, the district court cautioned

---

[2] The district court entered its dismissal order in the 1029 Case and then filed
a copy on the docket in the 181 Case.

[3] Warner timely amended his complaint in the 181 Case, asserting only his
own claims.  That case has proceeded during the pendency of this interlocu-
tory appeal.

6                    Opinion of the Court                  23-12408

Warner that, if he intended to assert J.W.'s claims, he was required to appear through counsel.

This appeal timely followed.[4]

## II.    STANDARD OF REVIEW

The interpretation of a statute or Federal Rule of Civil Procedure is a question of law subject to de novo review. *Burlison v. McDonald's Corp.*, 455 F.3d 1242, 1245 (11th Cir. 2006); *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir. 2000).

## III.    ANALYSIS

On appeal, Warner contends that the district court erred in finding that a parent is not permitted to advance a child's causes *pro se*.[5] Our binding precedent forecloses that argument, as we explain below.

In *Devine*, we held that "parents who are not attorneys may not bring a *pro se* action on their child's behalf." 121 F.3d at 582. We reasoned as much because neither 28 U.S.C. § 1654 nor Federal Rule of Civil Procedure 17(c)—authorizing *pro se* litigation and representative litigation on behalf of minors, respectively—permits a parent to represent his or her child *pro se* in federal court. *Id.* at 581. Section 1654 authorizes parties in federal court to plead and

---

[4] Warner appealed the dismissal of both cases, and those appeals have been consolidated here.

[5] Warner has not argued on appeal that the district court erred in dismissing his complaints for improper claim-splitting, and we express no opinion on that portion of the district court's order.

23-12408          Opinion of the Court          7

conduct their own cases personally or by counsel, but, as we said in *Devine*, "it is inapposite because it does not speak to the issue before us—whether [a parent] may plead or conduct his son's case." *Id.* Rule 17(c), on the other hand, provides for certain representatives, including parents, to sue on behalf of minors—but it does not confer on those representatives a right to act as legal counsel for such minors. *Id.*

Under our prior-panel-precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this [C]ourt sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). We are, therefore, bound by our holding in *Devine*: a parent cannot represent a child *pro se*.[6]

---

[6] We do not stand alone in reaching this conclusion. *See, e.g.*, *Navin v. Park Ridge Sch. Dist. 64*, 270 F.3d 1147, 1149 (7th Cir. 2001) ("Patrick was free to represent himself, but as a non-lawyer he has no authority to appear as J.P.'s legal representative."); *Johns v. Cnty. of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997) ("The issue of whether a parent can bring a pro se lawsuit on behalf of a minor falls squarely within the ambit of the principles that militate against allowing non-lawyers to represent others in court. Accordingly, we hold that a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer." (internal quotation omitted)); *Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Pennsylvania*, 937 F.2d 876, 883 (3d Cir. 1991) ("The right to counsel belongs to the children, and . . . the parent cannot waive this right. In accord with the decisions discussed above, we hold that Osei–Afriyie was not entitled, as a non-lawyer, to represent his children in place of an attorney in federal court."); *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61

8                    Opinion of the Court                    23-12408

Warner's arguments to the contrary are unavailing.  First, Warner argues that *Devine*'s holding was narrow and applies only to cases under the Individuals with Disabilities Education Act ("IDEA").  But that reading ignores *Devine*'s discussion of § 1654 and Rule 17(c), both of which are broadly applicable to all manner of federal litigation.  Second, Warner contends that, even if *Devine* were binding outside of the IDEA context, it was overruled in *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 535

---

(2d Cir. 1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child.  The choice to appear *pro se* is not a true choice for minors who under state law, *see* Fed. R. Civ. P. 17(b), cannot determine their own legal actions.  There is thus no individual choice to proceed *pro se* for courts to respect, and the sole policy at stake concerns the exclusion of non-licensed persons to appear as attorneys on behalf of others."), *overruled on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 535 (2007); *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986) ("We hold that under Fed. R. Civ. P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney.")  This is consistent, too, with our caselaw addressing *pro se* litigation in other representative contexts.  *See, e.g.*, *Iriele v. Griffin*, 65 F.4th 1280, 1284–85 (11th Cir. 2023) ("[W]e hold that, under the terms of § 1654, an executor may not represent an estate *pro se* where there are additional beneficiaries, other than the executor, and/or where the estate has outstanding creditors.  In such a situation as exists here, an executor of such an estate does not bring his 'own case' and thus the estate must be represented by counsel.").

(2007). But in *Winkelman*, the Supreme Court resolved only the narrow question of whether parents have their own rights to vindicate under IDEA, and the Court explicitly did "not reach petitioners' alternative argument, which concerns whether IDEA entitles parents to litigate their child's claims *pro se*." 550 U.S. at 535. Third, Warner urges us to read *Devine* as not "establish[ing] an ironclad bar to parental representation, admitting of no exceptions," and to instead consider exceptions in the best interests of the child. But there is simply nothing in *Devine*'s text that would allow us to read in such flexibility.

Finally, Warner asks us to overturn *Devine* en banc. This we cannot do. Under our prior panel precedent rule, we as a panel are bound by *Devine* "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc." *Archer*, 531 F.3d at 1352.

One final consideration: Warner advances an appealing policy argument, explaining that our extant rules have created a "counsel mandate." As a starting point, under both federal and Florida law, children cannot sue on their own because they lack legal capacity. *See* Fed. R. Civ. P. 17(c); Fla. R. Civ. P. 1.210(b). If parents cannot represent their children *pro se*, Warner says, "parents must pay the piper or forfeit the fight." All of this, Warner contends, is inconsistent with three bedrock rights: the statutory and constitutional right to self-representation; the parental right to make critical decisions for the child; and the child's own constitutional right to access the courts without a lawyer. At least one of

10                    Opinion of the Court                    23-12408

our colleagues in a sister court agrees that this "counsel mandate" model is in conflict with our deep-rooted right to self-representation, a right that has been firmly enshrined since our foundation. *See Raskin on behalf of JD v. Dallas Indep. Sch. Dist.*, 69 F.4th 280, 290–99 (5th Cir. 2023) (Oldham, J., dissenting in part and concurring in judgment); *see also id.* at 294 ("But under [the Appellee's] understanding, § 1654 offers minors a Hobson's choice: litigate with counsel, or don't litigate at all.  Dallas ISD's heads-I-win-tails-you-lose approach to § 1654 plainly defies the text of the statute and centuries of Anglo-American law dating as far back as the Magna Carta.  Dallas's position also would have baffled the Founders.  As the Supreme Court explained in *Faretta* [*v. California*, 422 U.S. 806, 827–28 (1975)], 'the basic right to self-representation was never questioned' at the Founding, and 'the notion of compulsory counsel was utterly foreign to the Founders.'" (alteration adopted)).  This Court, however, is bound by our precedent, which holds that a parent may not advance his child's cause of action *pro se*.  *See Devine*, 121 F.3d at 581–82; *Archer*, 531 F.3d at 1352.  For this reason, we affirm the district court's dismissal of Warner's claims on behalf of J.W.

**AFFIRMED.**